**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————————

GENEVIEVE CAPOLONGO,

                    **Plaintiff,**

    - against -

SPOTIFY USA INC.,

                    **Defendant.**

———————————————————————————

      **25-cv-9216 (JGK)**

      <u>MEMORANDUM OPINION</u>
      <u>AND ORDER</u>

**JOHN G. KOELTL, District Judge:**

The plaintiff, Genevieve Capolongo, brings this purported class action against the defendant, Spotify USA Inc. ("Spotify"), for alleged violations of Sections 349 and 350 of New York's General Business Law (the "GBL"), as well as for fraudulent inducement and unjust enrichment. <u>See</u> Complaint ("Compl."), ECF No. 1. Spotify moves to compel arbitration and stay this litigation based on an arbitration provision contained in Spotify's Terms of Use. Spotify also moves to dismiss the plaintiff's class claims. For the reasons that follow, Spotify's motion is **granted.**

## I.

The following facts are taken from the parties' submissions and are undisputed unless otherwise noted.

### A.

Spotify is the world's largest music streaming service. Compl. ¶ 3. For its paid users, Spotify markets personalized playlists and recommendations "made just for you" "based on your

listening habits."[1] Id. ¶¶ 52-63. The plaintiff, who alleges that she has "long preferred music outside of the mainstream," subscribed to Spotify in order to take advantage of personalized playlists "tailored to her individual tastes and reflect[ing] her listening preferences." Id. ¶¶ 89-90. In reality, according to the plaintiff, "Spotify's playlists and recommendations are shaped by undisclosed pay-for-play arrangements and hidden commercial incentives," resulting in Spotify's "continually recommend[ing] and push[ing] mainstream, major-label tracks . . . such as Drake, Zach Bryan, and Justin Bieber." Id. ¶¶ 89, 92. The plaintiff characterizes Spotify's practices as a "modern form of payola." Id. ¶ 10.

The plaintiff brings this action on behalf of a nationwide class of Spotify users for violations of Sections 349 and 350 of the GBL, as well as for fraudulent inducement and unjust enrichment. Id. ¶¶ 10, 107-151.

**B.**

Use of Spotify's music streaming platform is governed by Spotify's Terms of Use; all users must agree to the Terms of Use when signing up and continuing to use Spotify's platform. Declaration of Brian White ("White Decl.") ¶ 6, ECF No. 18. At all

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

relevant times, Spotify's Terms of Use have contained a manda-tory arbitration provision and class action waiver. Id. ¶ 7.

On February 19, 2021, the plaintiff created a Spotify ac-count and began a free trial with the platform's paid subscrip-tion service. Id. ¶ 10. As part of the sign-up process, the plaintiff clicked through a screen similar to the one below; the screen contained a hyperlink to the operative Terms of Use and provided the plaintiff notice that tapping "Create account" con-stituted agreement to those terms. Id. ¶¶ 11-15.



When creating her account, the plaintiff was presented with Terms of Use that became effective in February 2019 (the "February 2019 Terms.") Id. ¶¶ 6, 10-16. Those terms contained a mandatory arbitration clause and class action waiver. Ex. A to White Decl. § 24.2, ECF No. 18-1. The February 2019 Terms also provided that Spotify may "make changes to the [Terms of Use]" and that, "[i]n some cases, we will notify you in advance, and your continued use of [Spotify] after the changes have been made will constitute your acceptance of the changes." Id. § 2. After her free trial of Spotify's paid service ended, the plaintiff's account reverted to Spotify's free service. White Decl. ¶ 17.

On March 24, 2023, Spotify updated its Terms of Use (the "March 2023 Terms"). Id. ¶ 19. The March 2023 Terms also contained a mandatory arbitration provision and class action waiver. Ex. B to White Decl. § 6, ECF No. 18-2. Like the 2019 Terms, the March 2023 Terms also provided that Spotify may make changes to the terms, that it would provide notice for material changes, and that continued use of Spotify's platform following changes to the terms would constitute acceptance of any such changes. Id. § 7. The March 2023 Terms further provided that "[i]f Spotify makes any material change to the Arbitration Agreement . . ., you may reject any such change by sending us a personally signed, written notice of your decision to opt out of those changes" by email within 30 days. Id.

4

Spotify delivered notice of the March 2023 Terms to the plaintiff by email and also by an in-app pop-up message, as shown below:



**Update to Spotify's Terms of Use**

Hello,

We want to inform you of some changes we are making to the Spotify Terms of Use ("Terms"), which are effective as of March 24, 2023. The updated Terms can be found here. To help you easily understand what is changing from the current version of our Terms, below is an overview of the changes:

- We've added references to our new audiobook offering.
- We've updated the dispute resolution provisions, including the procedure for notifying Spotify of a legal dispute and the arbitration agreement.
- We've updated the export control and sanctions provision.
- We've made updates to improve clarity and readability.

Please note that we've made **no changes** to our Privacy Policy in this update.

You do not have to do anything else in order to agree to these updated Terms. By continuing to use Spotify, you accept the updated Terms. Premium Subscribers who do not wish to accept the updated Terms may choose to close their Spotify account prior to their next billing cycle or April 23, 2023, whichever comes first.

Thank you for using Spotify!



White Decl. ¶¶ 22-28. Both the email and the in-app pop-up contained a hyperlink to the operative terms and provided notice that continued use of Spotify would constitute acceptance of the new terms. Id. ¶¶ 23-24, 27-28. The plaintiff continued to use Spotify after receiving both notices and did not opt out of changes to the arbitration agreement. Id. ¶¶ 29-30; see also Compl. ¶ 93. In 2023, the plaintiff upgraded her Spotify account to the paid subscription service. White Decl. ¶ 31. She then

began receiving downloadable receipts that contained hyperlinks to the operative Terms of Use each billing cycle. Id. ¶ 43.

On August 26, 2025, Spotify updated its Terms of Use (the "Current Terms"). Id. ¶ 32. For paid users like the plaintiff, the Current Terms became effective on their "renewal date or thirty (30) days after the Effective Date, whichever occurs first." Ex. C to White Decl. § 7, ECF No. 18-3. The Introduction to the Current Terms provides that:

> THESE TERMS CONTAIN A MANDATORY ARBITRATION PROVISION THAT, AS FURTHER SET FORTH IN SECTION 6 BELOW, REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR ANY OTHER COURT PROCEEDINGS, OR CLASS ACTIONS OF ANY KIND.

Id. § 1. The arbitration agreement contained in the Current Terms provides that, "you and Spotify agree that any Dispute[2] between you and Spotify (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and whether the claims arise during or after the termination of these Terms) will be determined by binding individual (not class) arbitration."[3] Id. § 6.

---

[2] "Dispute" is defined as any "dispute, claim, and/or controversy that in any way relates to or arises in connection with these Terms or your relationship with Spotify as a user of the Spotify Service." Ex. C to White Decl. § 6.

[3] The arbitration provision contains exceptions for disputes containing intellectual property rights, claims brought in small claims court, and claims seeking only temporary or preliminary injunctive relief pending a final ruling from an arbitrator, none of which are relevant to this motion. Ex. C to White Decl. § 6.

Spotify provided notice of the Current Terms to the plaintiff by email, as shown below:

## Important Updates to Spotify's Terms



We're updating our Terms of Use ("**Terms**") to clarify your rights and to provide more information to you. The updated Terms are effective as of September 26, 2025, for existing users. You can read them here. Here are a few key changes:

- We have clarified that you may only access the version of the Spotify service available where you live at the applicable price set for that version of the service.
- We have clarified how we bill you for subscriptions and how subscriptions may be canceled.
- We have provided more information about different ways in which content may be posted or shared on the platform.
- We have also provided more information about our content policies and practices, and our personalized recommendations.
- We have included links to important user policies and guidelines for your ease of reference.
- We are making some updates to the arbitration agreement.

You do not have to do anything else in order to agree to these updated Terms. By continuing to use Spotify, you accept the updated Terms.

Thank you for using Spotify!

White Decl. ¶ 35. The email noted updates to the applicable arbitration agreement and contained a hyperlink to the Current Terms. Id. ¶¶ 35-38. The email also provided that "By continuing to use Spotify, you accept the updated Terms." Id. ¶ 39. The Current Terms similarly provide that "By . . . using[] the Spotify Service, you agree to these Terms. If you do not agree to these Terms, then you must not use the Spotify Service or

access any Content." Ex. C to White Decl. § 1. The Current Terms also provide that "Premium Subscribers who do not wish to continue using the Spotify Service under the updated Terms must close their Spotify account prior to their renewal date or thirty (30) days after the Effective Date, whichever occurs first." Id. § 7. Like the March 2023 Terms, the Current Terms provide that users may opt out of changes to the arbitration agreement by sending e-mail notice to Spotify. Id.

The plaintiff paid her Spotify subscription bill on September 23, 2025, and again in October, November, and December 2025. White Decl. ¶ 42. She also continued to stream songs on Spotify each month. Id. ¶ 45; see also Compl. ¶¶ 91-93. The plaintiff did not opt out of the changes to the arbitration agreement contained in the Current Terms. White Decl. ¶ 41.

### C.

The plaintiff filed this action on November 4, 2025. See Compl. Spotify now moves to compel arbitration and stay this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. ECF No. 16. Spotify also moves to dismiss the plaintiff's class claims with prejudice. Id.

### II.

Under the FAA, 9 U.S.C. § 4, "a district court must enter an order to arbitrate upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith

8

is not in issue." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 n.27 (1983). A court considering whether to compel arbitration pursuant to a purported arbitration agreement must decide "(1) whether there exists a valid agreement to arbitrate at all under the contract in question and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001).

"The determination of whether parties have contractually bound themselves to arbitrate a dispute — a determination involving interpretation of state law — is a legal conclusion." Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 26 (2d Cir. 2002).[4] Thus, "[w]hen deciding whether the parties agreed to arbitrate a certain matter," courts generally "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995). "It is a basic tenet of contract law that, in order to be binding, a contract requires a meeting of the minds and a manifestation of mutual assent." Starke v. SquareTrade, Inc., 913 F.3d 279, 288 (2d Cir. 2019). "Where an offeree does not have actual notice of certain contract terms, he is nevertheless

---

[4] The parties agree that New York law should govern this case.

bound by such terms if he is on inquiry notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." Id. at 289.

"[N]ew commerce on the Internet . . . has not fundamentally changed the principles of contract." Register.com v. Verio, Inc., 356 F.3d 393, 403 (2d Cir. 2004). Applying ordinary contract law principles, courts routinely uphold "'clickwrap' (or 'clickthrough') agreements, which require users to click an 'I agree' box after being presented with a list of terms and conditions of use" "for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" Meyer v. Uber Techs. Inc., 868 F.3d 66, 75 (2d Cir. 2017) (applying California law but noting that New York and California apply substantially the same rules for determining whether there has been mutual assent necessary to form a contract). However, in order to be bound by an arbitration provision contained in a clickwrap agreement, the web-user must have "reasonable notice of the arbitration provision." Starke, 913 F.3d at 292; see also Feld v. Postmates, Inc., 442 F. Supp. 3d 825, 829-30 (S.D.N.Y. 2020).

Upon satisfying itself that a valid agreement to arbitrate exists, the district court must then decide whether the claims at issue are within the scope of the arbitration agreement. See Meyer, 868 F.3d at 74. When there are issues concerning the

10

scope of an arbitration agreement and whether particular disputes sought to be arbitrated fall within that scope, also known as issues of arbitrability, those issues are generally "for judicial determination unless the parties clearly and unmistakably provide otherwise." NASDAQ OMX Grp., Inc. v. UBS Sec., LLC, 770 F.3d 1010, 1031 (2d Cir. 2014).

"In deciding motions to compel, courts apply a standard similar to that applicable for a motion for summary judgment." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016). Thus, a court should "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits" and "must draw all reasonable inferences in favor of the non-moving party." Id. The court must order arbitration "if there is no genuine issue of material fact regarding the requirements to compel arbitration." Nat'l Union Fire Ins. Co. of Pittsburgh v. Beelman Truck Co., 203 F. Supp. 3d 312, 317 (S.D.N.Y. 2016).

### III.

### A.

The first question is whether the plaintiff and Spotify entered into a valid and enforceable agreement to arbitrate. "An agreement to arbitrate exists where the notice of the

11

arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." Meyer, 868 F.3d at 76.

As explained above, the plaintiff first agreed to Spotify's Terms of Use (and the applicable arbitration agreement) in February 2021 when she signed up for Spotify and clicked the "Create account" button on the in-app sign-up page. See Peiran Zheng v. Live Auctioneers LLC, No. 20-cv-9744, 2021 WL 2043562, at *5 (S.D.N.Y. May 21, 2021) ("The plaintiff clicked 'AGREE,' manifesting the plaintiff's assent to be bound by the Terms & Conditions, which contained the arbitration provision.").

More recently, the plaintiff agreed to the Current Terms (and the applicable arbitration agreement contained therein) on September 23, 2025, when she continued to use Spotify and pay her Spotify subscription bill after receiving notice of changes to Spotify's Terms of Use. Spotify provided the plaintiff with conspicuous notice of the Current Terms by email and by an in-app pop-up, both of which contained a conspicuous hyperlink to the Current Terms and provided the plaintiff with the opportunity to review the applicable arbitration agreement. See Meyer, 868 F.3d at 79 (reasonably conspicuous hyperlink text to the terms containing an arbitration agreement provides a user with proper notice); Pincaro v. Glassdoor, Inc., No. 16-cv-6870, 2017 WL 4046317, at *6 (S.D.N.Y. Sept. 12, 2017) (email advising

12

of updates to an arbitration agreement provides sufficient notice). And the plaintiff manifested her assent to the Current Terms when she continued to use Spotify after receiving notice of the updated terms. See, e.g., Sacchi v. Verizon Online LLC, No. 14-cv-423, 2015 WL 765940, at *7 (S.D.N.Y. Feb. 23, 2015) ("Plaintiff continued to use his Verizon services, thereby accepting the revised terms, including the arbitration clause."); Saizhang Guan v. Uber Techs., 236 F. Supp. 3d 711, 726 (E.D.N.Y. 2017) ("Courts applying New York law consistently have held that customers accept revised terms of their accounts by continuing to use their accounts after receiving the revised terms.").

**B.**

The plaintiff argues that the arbitration agreement is unenforceable for several reasons. None is persuasive.

**1.**

The plaintiff first takes issue with Section 6 of the arbitration agreement, which provides that the arbitrator "may not award any relief," including "injunctive relief, benefitting anyone but the parties." Mem. of Law in Opp. to Mot. ("Opp.") 7, ECF No. 20; Ex. C to White Decl. § 6. The plaintiff contends that this limitation renders the arbitration agreement unenforceable because it waives her right to seek public injunctive relief. Opp. 7. The plaintiff appears to ground her argument, in part, in the so-called "effective vindication" exception to the

13

FAA, but that exception applies where a provision in an arbitration agreement forbids the assertion of a <u>federal</u> statutory right. <u>Am. Express Co. v. Italian Colors Rest.</u>, 570 U.S. 228, 235-37 (2013). Here, the plaintiff asserts only statutory claims arising under state law. <u>See</u> Compl. ¶¶ 107-51. The effective vindication exception is therefore inapplicable in this case. <u>See, e.g.</u>, <u>Crewe v. Rich Dad Educ., LLC</u>, 884 F. Supp. 2d 60, 78 (S.D.N.Y. 2012). Moreover, the plaintiff can vindicate any rights she has under the GBL in arbitration. The arbitration agreement provides that the arbitrator may award relief, including injunctive relief, "in favor of the individual party seeking relief," Ex. C to White Decl. § 6, and the Supreme Court has explicitly allowed the elimination of class relief as part of an arbitration agreement, <u>see</u> <u>Italian Colors</u>, 570 U.S. at 236-37.[5]

**2.**

The plaintiff next contends that the arbitration agreement is unenforceable because it provides for inadequate discovery. Opp. 11-14. The arbitration agreement provides for dispute resolution by National Arbitration and Mediation ("NAM"). Ex. C to

---

[5] The plaintiff also argues that the arbitration agreement is unenforceable because New York "prohibits prospective waivers of public rights." Opp. 7. It is unclear what the plaintiff's argument means. The arbitration agreement permits injunctive relief. It prohibits class actions, but that prohibition is specifically permitted pursuant to the FAA. <u>See</u> <u>Italian Colors</u>, 570 U.S. at 238.

White Decl. § 12. The applicable NAM rules in turn provide that the arbitration will have "the power to order such discovery, by way of document production, interrogatory, deposition, or otherwise, as the Arbitrator(s) considers necessary for a full and fair exploration of the issues in dispute." NAM Rule 18(A), Ex. 2 to Declaration of Michael W. McTigue Jr. ("McTigue Decl."), ECF No. 27-2. There has been no showing that these procedures will not afford the plaintiff a fair opportunity to present her claims; the NAM rules thus provide no basis on which to conclude the arbitration agreement is unenforceable. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991).

### 3.

The plaintiff also argues that the arbitration agreement is unenforceable because the applicable filing fees far exceed the value of any damages award she could recover. Opp. 14-15. According to the plaintiff, NAM's rules require her to pay a $215 filing fee, but her individual damages "would only be a few dollars, roughly $5 to $21." Opp. 14-15 & n.2. But the plaintiff has not demonstrated any inability to pay the $215 filing fee, Hale v. First USA Bank, N.A., No. 00-cv-5406, 2001 WL 687371, at *4 (S.D.N.Y. June 19, 2001), and, indeed, that fee is less than the $405 filing fee in this Court. See Fee Schedule and Related Information, U.S. District Court, Southern District of New York (effective Dec. 1, 2023),

15

https://www.nysd.uscourts.gov/programs/fees. In any event, under NAM's rules, the arbitrator may shift the entire cost of the arbitration to the losing party. See NAM Rule 21(D), Ex. 2 to McTigue Decl.[6]

**4.**

Finally, the plaintiff argues that compelling arbitration would violate her right to have her case heard by an Article III judge. Opp. 15-24. There is no basis to suggest that requiring arbitration would violate Article III, see Katz v. Cellco P'ship, 794 F.3d 341, 344 (2d Cir. 2015) (FAA does not violate Article III), and any such holding would overturn decades of Supreme Court precedent enforcing arbitration as a valid means of dispute resolution.

**C.**

Given the existence of a valid and enforceable agreement to arbitrate, the next question is whether the particular claims brought by the plaintiff against Spotify are within the scope of the arbitration agreement. The arbitration agreement contained in the Current Terms is broad and provides for the arbitration of "any Dispute between you and Spotify," whether "based in

---

[6] The plaintiff's real complaint is that her individual damages do not provide her with sufficient incentive to pursue the litigation. But that is an objection to the Supreme Court's decision in Italian Colors permitting parties to agree not to pursue class relief and not an objection to the size of the fee for the arbitration in this case.

16

contract, tort, statute, fraud, misrepresentation, or any other legal theory." Ex. C to White Decl. § 6. "Dispute" is likewise broadly defined and encompasses "any dispute, claim and/or controversy that in any way relates to or arises in connection with these Terms or your relationship with Spotify as a user of the Spotify Service." Id. The plaintiff brings four claims arising out of her use of Spotify's streaming platform: (1) "deceptive acts and practices" under Section 349 of the GBL; (2) false advertising under Section 350 of the GBL; (3) fraudulent inducement; and (4) unjust enrichment. Compl. ¶¶ 107-151. The arbitration agreement plainly covers the plaintiff's claims, and those claims therefore must be decided in an arbitration. See, e.g., Vasell v. SeatGeek, Inc., No. 24-cv-932, 2025 WL 240912, at *7 (E.D.N.Y. Jan. 17, 2025) ("[T]he arbitration agreement applies to any dispute, claim or controversy between user and [the defendant] . . . by its terms, the Arbitration Agreement therefore covers [the] alleged violations."). Spotify's motion to compel arbitration is accordingly **granted**.

## **IV.**

Spotify requests that the plaintiff's class claims be dismissed with prejudice. In addition to providing for mandatory arbitration, the Current Terms require that all claims "will be determined by binding individual (not class) arbitration." Ex. C

17

to White Decl. § 6 (emphasis added). The Current Terms further

provide that:

> YOU AND SPOTIFY AGREE THAT EACH MAY BRING CLAIMS AGAINST
> THE OTHER IN ARBITRATION OR LITIGATION ONLY IN YOUR OR
> ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS
> MEMBER IN ANY PURPORTED CLASS, COLLECTIVE, CONSOLIDATED,
> PRIVATE ATTORNEY GENERAL, OR REPRESENTATIVE ACTION.

Id. The plaintiff concedes that, under the Supreme Court's deci-

sion in AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 348

(2011), her class allegations should be stricken if the Court

compels arbitration. Opp. 24. The plaintiff's class claims are

therefore **dismissed with prejudice**. See, e.g., McDaniel v. Home

Box Office, Inc., No. 22-cv-1942, 2023 WL 1069849, at *4

(S.D.N.Y. Jan. 27, 2023) (granting motion to compel arbitration

and dismissing class allegations with prejudice because "the

class waiver is enforceable").

**V.**

Spotify also requests that the Court stay this case pending

arbitration if it grants the motion to compel arbitration.

The FAA provides that where a court is called upon to adju-

dicate a motion to compel arbitration, "the court in which such

suit is pending, upon being satisfied that the issue involved in

such suit or proceeding is referable to arbitration under such

an agreement, shall on application of one of the parties stay

the trial of the action until such arbitration has been had in

accordance with the terms of the agreement, providing the

18

applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. A stay of proceedings is mandatory "after all claims have been referred to arbitration and a stay [has been] requested." Katz, 794 F.3d at 345.

In this case, all claims have been ordered to be submitted to arbitration and Spotify has requested that the Court enter a stay of proceedings in this Court pending the outcome of the arbitration. Therefore, this case is **stayed** pending the outcome of the arbitration.

### CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, Spotify's motion to compel arbitration and stay the litigation pending the results of arbitration is **granted**. The plaintiff's class claims are **dismissed with prejudice**.

This action is **stayed** pending the completion of the arbitration between the parties. The parties should provide a status report to the Court within fourteen (14) days of the completion of the arbitration.

19

The Clerk is respectfully requested to close ECF Nos. 16 and 21.[7]

**SO ORDERED.**
**Dated:     New York, New York**
           **April 30, 2026**

                                        _____
                                            John G. Koeltl
                                        **United States District Judge**

_____

[7] Oral argument is not necessary to decide this motion. The plaintiff's request for oral argument (ECF No. 21) is **denied.**